**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC J. MENG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-514 CAS |
| | ) | |
| CITIMORTGAGE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on defendants' motions to dismiss plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court will grant defendants' motions to dismiss.

*I. Background*

This case arises from the foreclosure sale of plaintiff's real property located in Oakville, Missouri.  On October 31, 2011, plaintiff filed a two-count petition against defendants CitiMortgage, Inc. ("CitiMortgage") and ABN AMRO Mortgage Group, Inc. ("ABN"), in the Circuit Court of St. Louis County, Missouri.  Plaintiff sought a temporary restraining order ("TRO") to stop the foreclosure sale of his real property located at 5303 Milburn Road, Oakville, Missouri (the "Property"), which was scheduled for November 2, 2011.  CitiMortgage entered an appearance and opposed the TRO.  After notice and argument by counsel, the state court denied plaintiff's request for a TRO, and the Property was sold at foreclosure on November 2, 2011 to defendant Federal Home Loan Mortgage Corporation ("Freddie Mac").

On November 8, 2011, defendant CitiMortgage filed a motion to dismiss in state court on the grounds that there is no private right of action under the Home Affordable Modification

Program, and that the deed of trust which plaintiff executed requires that any modification be in writing.  The Circuit Court sustained CitiMortgage's motion but allowed plaintiff leave to amend.

On December 9, 2011, plaintiff filed a second amended petition alleging the following claims: tort of wrongful foreclosure against defendants CitiMortgage and ABN (Count I); action in equity to set aside foreclosure sale against defendants CitiMortgage, ABN, and Freddie Mac (Count II); equitable redemption against defendants CitiMortgage, ABN, and Freddie Mac (Count III); promissory estoppel against defendants CitiMortgage, ABN, and Freddie Mac (Count IV); and negligent misrepresentation against CitiMortgage and ABN (Count V).

CitiMortgage moved to dismiss plaintiff's second amended complaint.  After being served, defendant Freddie Mac removed the case to federal court pursuant to 28 U.S.C. §§ 1331 & 1442, and 12 U.S.C. § 1452(f).  Following removal, Freddie Mac also moved to dismiss the claims against it.  Defendant ABN was not served for many months after removal, and when it entered an appearance it also moved to dismiss all claims against it.  Plaintiff opposed CitiMortgage's motion to dismiss his second amended petition.  He did not file responses to ABN's and Freddie Mac's motions.

## II.  Legal Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff need not provide specific facts in support of its allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the

claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted).  This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

Claims of fraud have a heightened pleading standard.  The Federal Rules of Civil Procedure require a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  See also Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). Although a pleading alleging fraud need not provide anything more than notice of the claim, it must contain "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Id.  Thus, a plaintiff must plead "'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" Id. (quoting Bennett v. Burg, 685 F.2d 1053, 1062 (8th Cir.), adhered to on reh'g, 710 F.2d 1361 (8th Cir. 1982) (en banc)).  "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. v. Quality Inns, 61 F.3d 639, 644 (8th Cir. 1995).  See also Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, (8th Cir. 2002).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S.

-3-

at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id; Fed. R. Civ. P. 8(a)(2). Materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

### III. Plaintiff's Allegations

Plaintiff alleges in his amended petition (hereinafter "Complaint") that on March 19, 2007, he entered into an agreement with defendant ABN to finance the Property and executed a note and deed of trust, and a second note and second deed of trust securing the Property. See Doc. 4 at 2. The first note was in the principal amount of $143,200.00, and the second note was in the principal amount of $17,800.00. Id. at 3. Plaintiff alleges both deeds of trust were recorded in the office of the Recorder of Deeds for St. Louis County. The complaint further states that on August 22, 2007, plaintiff was notified that the mortgage loan servicing the first note and deed of trust would be transferred to defendant CitiMortgage. Id.

In July 2009, plaintiff alleges that he signed up for the "NACA Save the Dream Program," which assisted him in completing qualifying documents for a loan modification under the Home Affordable Modification Program ("HAMP"). Id. at 4. According to the complaint, he executed and delivered to CitiMortgage a hardship affidavit to support his loan modification request. The complaint states that on July 31, 2009, defendant CitiMortgage notified plaintiff that it was granting him preliminary approval of his loan modification request. On September 16, 2009, plaintiff alleges he accepted CitiMortgage's offer of a HAMP trial period plan, which was to run 90 days. Id.

During the trial period, plaintiff made reduced payments of $554.59 for the amount owed on the deed of trust. CitiMortgage deposited plaintiff's checks and held the reduced payments in

an unapplied funds account. CitiMortgage did not inform plaintiff that the funds he paid during the trial period would not be applied to his note and deed of trust. Id.

Sometime in March 2010, CitiMortgage determined that plaintiff did not qualify for a permanent loan modification under HAMP. Id. at 5. CitiMortgage then reviewed plaintiff's loan for a traditional loan modification, for which it also determined he did not qualify. Beginning on March 29, 2010, after having been notified that his loan was not modified, plaintiff recommenced making payments in the full amount under the original terms of the note and deed of trust, and he alleges he continued to do so up until the date he filed his petition. Id. at 6. Plaintiff alleges that the payments he made to CitiMortgage during the HAMP trial period and those made subsequent to his failed modification were not applied to his account, but rather CitiMortgage placed the payments in an unapplied funds account. He alleges that he was not aware that his payments were not being applied to his indebtedness, and as a result he was falsely led into believing that he was in good standing on his payments. Id.

In September 2011, plaintiff received notice from CitiMortgage's attorney, Millsap & Singer, P.C., of a foreclosure sale to be held on November 2, 2011. Id. at 7-8. Plaintiff alleges that the acceleration notice was false in that it failed to give credit for payments he had made or it did not provide an accounting of the unapplied funds account. On November 2, 2011, defendant CitiMortgage sold the Property at a foreclosure sale to Freddie Mac. Plaintiff alleges Freddie Mac was not an "innocent purchaser," and that the sale price was "unconscionably inadequate." Id. at 11. Plaintiff also alleges defendants did not properly notify him that he was in default, and that they lulled him into belief that he was not in default by continuing to accept his payments. He also alleges the foreclosure sale was wrongful and void. Id. at 10.

-5-

### *IV. Discussion*

#### A.    Claims under HAMP

Defendants argue in their motions to dismiss that plaintiff's claims should be dismissed because there is no private right of action under HAMP.  HAMP is one of several economic assistance programs created in response to the 2008 financial crisis. See Brisbin v. Aurora Loan Servs., 2011 WL 1641979, at *5 (D. Minn. May 2, 2011) (quoting Zoher v. Chase Home Fin., 2010 WL 4064798, at *2 (S.D. Fla. Oct. 15, 2010)).  As part of the Emergency Economic Stabilization Act of 2008 ("EESA"), HAMP was formulated by the Department of Treasury and other government institutions as a way to provide financial incentives to participating mortgage servicers to modify terms of existing eligible loans.  See id.  Several courts have held that HAMP does not provide a private right of action for borrowers. See, e.g., Bohnhoff v. Wells Fargo Bank, N.A., 853 F.Supp.2d 849, 853 (D. Minn. 2012) (citation omitted) ("As this court has previously noted, there is no private right of action under HAMP."); Ming'ate v. Bank of America, N.A., 2011 WL 4590431, at *3 (D.Minn. Sept. 30, 2011); Maxwell v. Aurora Loan Servs., 2011 WL 4014327, at *2 (E.D. Mo. Sept. 9, 2011).  The Court finds, however, that plaintiff is not attempting to bring a private right of action under HAMP or any other federal law.  It is clear from the complaint that plaintiff's claims are based on Missouri state law.  The Court will not dismiss plaintiff's complaint on this ground.

#### B.    Tort Action for Wrongful Foreclosure

In Count I plaintiff alleges a tort action for wrongful foreclosure against CitiMortgage and ABN. Under Missouri law, "[a] tort action for damages for wrongful foreclosure lies against a mortgagee only when the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced." Dobson v. Mortgage Elec. Registration Sys., 259 S.W.3d 19, 22 (Mo. Ct. App. 2008) (citing Peterson v. Kansas City Life Ins. Co., 98 S.W.2d 770, 773–75 (Mo. 1936); Moore v.

Moore, 544 S.W.2d 279, 282 (Mo. Ct. App. 1976); Spires v. Lawless, 493 S.W.2d 65, 72 (Mo. Ct. App. 1973)). "If there is a right to foreclose, there can be no tort cause of action for wrongful foreclosure." Id.; see also Peterson, 98 S.W.2d at 773–74; Abrams v. Lakewood Park Cemetery Ass'n, 196 S.W.2d 278, 285–86 (Mo. 1946); Petring v. Kuhs, 171 S.W.2d 635, 639 (Mo. 1943); Loeb v. Dowling, 162 S.W.2d 875, 877 (Mo. 1942). "A plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose." Dobson, 259 S.W.3d at 22 (emphasis added). A plaintiff must "plead and prove such compliance with the terms of the deed of trust as would avoid lawful foreclosure." Id. (quoting Spires, 493 S.W.2d at 71).

In this case, plaintiff does not allege in his complaint that his mortgage was not in default when the foreclosure proceedings began. In fact, plaintiff alleges in Count I that he "was falsely led to believe that he was not in default on his indebtedness to defendants." See Doc. 4 at 7. He also alleges in Count I that "[d]efendants did not properly notify plaintiff that he was in default," and they "lulled and led plaintiff to believe that he was not in default . . . ." Id. at 8. The complaint does not contain an allegation that plaintiff was not in default, and plaintiff implicitly concedes that his loan was in default under the terms of the deed of trust. Therefore, the Court finds plaintiff has failed to state a tort claim for wrongful disclosure, and the Court will dismiss this claim against defendants CitiMortgage and ABN. See Business Bank of St. Louis v. Apollo Invs., Inc., 366 S.W.3d 76, 81 (Mo. Ct. App. 2012) (finding counter-claimants failed to state a tort claim for wrongful disclosure because they failed to plead that they were not in default).

### C.    Action in Equity for Wrongful Foreclosure

Count II of plaintiff's complaint is a claim in equity. Plaintiff petitions the Court to set aside the foreclosure sale as void. Under Missouri law, if a mortgagee had the right to foreclose, but the

sale was otherwise void or voidable, then the remedy is a suit in equity to set the sale aside. However, a mortgagor may invoke the aid of equity to set aside a foreclosure sale only if the trustee's sale involved fraud, unfair dealing, or mistake. American First Fed., Inc. v. Battlefield Ctr. LP, 282 S.W.3d 1, 8 (Mo. Ct. App. 2009). See also Dobson, 259 S.W.3d at 22. Even where a mortgagee purchases a property for an inadequate price at its own foreclosure sale, the proceedings and circumstances surrounding the sale must evidence "a substantial irregularity or probable unfairness to justify setting aside the sale." Id. at 9. "An irregularity in the execution of a foreclosure sale must be substantial or result in a probable unfairness to suffice as a reason for setting aside a voidable trustee's deed." Kennon v. Camp, 353 S.W.2d 693, 695 (Mo. 1962) (en banc). For example, failure to give proper notice of sale may give rise to a wrongful foreclosure action. Williams v. Kimes, 996 S.W.2d 43, 46 (Mo. 1999) (en banc). See also Manard v. Williams, 952. S.W.2d 387, 391 (Mo. Ct. App. 1997) (holding that "lack of any notice [of sale] is such a fundamental procedural defect as to render null and void the foreclosure sale").

In his complaint, plaintiff alleges that the foreclosure sale was defective for the following reasons: (1) the purchaser, Freddie Mac, was not an innocent purchaser; (2) the sale price at the foreclosure sale was "unconscionably inadequate"; (3) the acceleration notice was not proper because it did not correctly state the total outstanding amount of the loan or give a correct legal description of the Property; (4) the sale was held by a trustee who was not properly appointed; and (5) CitiMortgage did not have the legal right to accelerate because CitiMortgage had accepted payments less than the full amount set forth in the note and deed of trust, and therefore it had waived its right to declare a default. The Court will consider each of these grounds in turn.

Plaintiff alleges Freddie Mac was not an innocent purchaser "in that the loan, and the note and Deed of Trust evidencing same, were made pursuant to a Federal Home Loan Mortgage

Corporation [sic], and at the time the documents were executed, Defendant Federal Home Loan Mortgage Corporation agreed to repurchase the loans, directing the underwriting rules, and setting the qualification rules." <u>See</u> Doc. 4 at 11. As written, these allegations are meaningless. The Court conjectures that plaintiff intended to allege that Freddie Mac, which is a government-sponsored enterprise, was not an innocent purchaser because it had a hand in drafting form deeds of trust and certain rules governing the note and deed of trust at issue in this case. If this is plaintiff's contention, the Court fails to see plaintiff's logic. But even if the Court were to suppose that under these circumstances Freddie Mac was not an impartial buyer, this fact alone would not state a claim. In order to set aside a foreclosure sale, there must also be fraud or a substantial irregularity in the sale. Plaintiff's complaint does not meet this pleading requirement with regard to the actions of Freddie Mac. <u>See</u> <u>Kennon</u>, 353 S.W.2d at 695.

As for the purchase price, plaintiff alleges, without further elaboration, that the foreclosure sale should be set aside because the price paid for the Property was "unconscionably low." Doc. 4 at 11. There are no allegations and plaintiff does not specify what was the sale price and what was the fair market price of the Property. He also does not allege that the sale was not fairly conducted, or that there was a less than full opportunity for competitive bidding. For example, there are no allegations that the sale was not properly advertised or that it was held at an unusual time or location. Under these circumstances, plaintiff has failed to meet his pleading standard based on the sale price alone. "It is a well-established rule in Missouri that mere inadequacy of consideration, without more, will not justify setting aside a foreclosure sale." <u>Carondelet Savings & Loan Assoc.</u> <u>v. Boyer</u>, 595 S.W.2d 744, 747 (Mo. Ct. App. 1980) (citing <u>West v. Axtell</u>, 17 S.W.2d 328 (Mo. 1929)). "If a sale is 'fairly and lawfully conducted, without fraud and partiality and with full opportunity for competitive bidding,' an inadequate sale price alone will not justify setting aside a

foreclosure sale." Boatmen's Bank of Jefferson Cnty. v. Community Interiors, Inc., 721 S.W.2d 72, 78 (Mo. Ct. App. 1986) (quoting Mueller v. Simmons, 634 S.W.2d 533, 536 (Mo. Ct. App. 1982)).

Plaintiff also alleges that the foreclosure sale should be set aside because the acceleration notice he received was flawed in that it did not give a correct legal description of the Property or accurately state the total outstanding amount of the loan.  Importantly, plaintiff does not allege that the advertisement of the sale gave an improper description of the Property, but rather he alleges that the acceleration notice he received did not contain a proper description.  The Court does not see how this could have impacted the fairness of the sale.  Presumably plaintiff, as the mortgagor, knew what property the notice referred to, and the Court cannot conclude this was a "substantial irregularity" that justified setting aside the sale.  See Mueller, 634 S.W.2d at 536 (no substantial irregularity where document erroneously stated that sale would take place in Hannibal, Monroe County.  The court found error inconsequential and patently obvious as there is no city of Hannibal in Monroe County).  The same analysis applies to plaintiff's allegation that the acceleration notice did not correctly state the outstanding amount on the loan.  The acceleration notice may have misstated the outstanding amount of the loan, but this does not change the fact that there was indeed a deficiency, and plaintiff was in arrears on his payments.  Even if there were errors on the acceleration notice as to the amount of the outstanding debt, there remained a deficiency, and the error had no impact on the fairness of the sale.  It is clear from the record that plaintiff was on notice that there was to be a foreclosure sale.  Plaintiff sought legal counsel, and brought a TRO in state court to prevent the sale.

Plaintiff also alleges the sale was improper because it was held by a trustee who was not properly appointed.  The public records show that the successor trustee was properly appointed.[1] After plaintiff executed the deed of trust, ABN merged with CitiMortgage, which became the successor-in-interest to the note and deed of trust of the Property.  On September 27, 2011, pursuant to the terms of the deed of trust, CitiMortgage appointed Millsap & Singer, P.C. as successor-trustee of the deed of trust.  The Court will not grant relief on this ground.

Plaintiff's last ground for setting aside the sale – that CitiMortgage did not have a right to foreclose because it had accepted payments less than the amount set forth in the note and deed of trust – is also without merit.  This claim is precluded by the express language of the deed of trust itself.  Plaintiff is essentially claiming that there was a payment modification to the deed of trust during the trial period.  However, nowhere in the complaint does plaintiff allege that any such modification was in writing.

Under the terms of the deed of trust plaintiff agreed that, "Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable.  To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it."  See Deed of Trust, March 19, 2007, ¶ 27. What is missing from plaintiff's complaint is an allegation that the parties agreed, in writing, to

---

[1]Generally, the Court must ignore materials that are outside of the pleadings, however, district courts "may take judicial notice of public records and may thus consider them on a motion to dismiss."  Stahl v. United States Dept. of Agric., 327 F.3d 697, 700 (8th Cir. 2003) (citing Faibisch v.University of Minn., 304 F.3d 797, 802–03 (8th Cir. 2002)).

modify the terms of the deed of trust; that they agreed, in writing, that CitiMortgage would accept lower payments during the HAMP trial period and not consider plaintiff in default; and that if it was determined plaintiff did not qualify for a permanent loan modification, plaintiff would not be required to pay back the difference from the lower payments.   There are no allegations in the complaint that the terms of the deed of trust were modified as such in writing.

In sum, the Court finds plaintiff has failed to state a claim in Count II.   There are no allegations in the complaint that would warrant setting aside the foreclosure sale under Missouri law, and the Court will dismiss Count II.

### D.      Equitable Redemption

In Count III, plaintiff alleges a claim of equitable redemption.   Defendants argue that plaintiff fails to state a claim of equitable redemption.   In response to defendant CitiMortgage's motion to dismiss, plaintiff states that defendant's arguments are "well-taken" and he "agrees and consents that Count III should be dismissed."   See Doc. 23 at 8.   Accordingly, the Court will dismiss Count III. ### E.      Promissory Estoppel

In Count IV plaintiff alleges a claim of promissory estoppel.   Under Missouri law, "A claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure."   Clevenger v. Oliver Ins. Agency, Inc., 237 S.W.3d 588, 590 (Mo. 2007) (en banc).   Missouri law requires that a promise be "definite and delineated as an offer under contract law."   Prenger v. Baumhoer, 939 S.W.2d 23, 27 n.4 (Mo. Ct. App. 1997).   "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made.   The promise must be definite and made in a contractual sense.   A supposed promise that is wholly

-12-

illusory or a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance." City of St. Joseph, Mo. v. Southwestern Bell Tel., 439 F.3d 468, 477 (8th Cir. 2006) (quotations and citations omitted) (applying Missouri law).

"In Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and by proven by the party seeking its enforcement." Glenn v. HealthLink HMO, Inc., 360 S.W.3d 866, 877 (Mo. Ct. App. 2012) (quoting Clevenger, 237 S.W.3d at 590). The doctrine of promissory estoppel should applied "with caution, sparingly, and only in extreme cases to avoid unjust results." 1861 Group, LLC v. Wild Oats Markets, Inc., 728 F.Supp.2d 1052, 1059 (E.D. Mo. 2010) (quoting City of St. Joseph, 439 F.3d at 477).

Plaintiff's complaint does not plead any facts indicating a promise by defendants, let alone the remaining elements of promissory estoppel. The complaint does not allege that defendants promised plaintiff that he would not be in default if he made lowered payments, or that they would not foreclose. Plaintiff also does not allege that defendants promised him he would qualify for a modification to the deed of trust. In fact, plaintiff alleges that CitiMortgage notified him that he did not qualify for a HAMP or traditional loan modification. Based on the complaint, it would appear that plaintiff's theory of promissory estoppel is based on defendant's conduct in accepting the lowered payments and not informing plaintiff that they considered the loan to be in default. This conduct does not amount to a promise, especially a promise that is "definite and delineated as an offer under contract law." Prenger, 939 S.W.2d at 27 n.4. In his allegations of promissory estoppel plaintiff does refer to defendants' unspecified "representations." Id. However, this bare and conclusory allegation does not provide sufficient factual information to meet the pleading requirement of promissory estoppel. In sum, plaintiff has not stated a claim of promissory estoppel because there is no allegation of an explicit promise, and no amount of discovery can cure this

-13-

pleading defect.  See Satcher v. University of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) (holding that plaintiff could not raise a fact at summary judgment which was not contained in his complaint).  The Court will dismiss Count IV.

      **F.**      **Negligent Misrepresentation**

In Count V plaintiff alleges a claim of negligent misrepresentation against defendants CitiMortgage and ABN.  To state a claim of negligent misrepresentation under Missouri law, plaintiff must allege: (1) the defendant supplied information in the course of his business; (2) because of a failure by defendant to exercise reasonable care, the information was false; (3) the information was provided by the defendant to the plaintiff in a particular business transaction; and (4) the plaintiff relied on the information and thereby suffered a pecuniary loss.  Tri-County Human Development Corp. v. Tri-County Group XV, Inc., 901 S.W.2d 308, 312 (Mo. Ct. App. 1995) (citing Quality Wig Co., Inc. v. J.C. Nichols Co., 728 S.W.2d 611, 618 (Mo. Ct. App. 1987)).

The Court finds plaintiff's claim of negligent misrepresentation fails because there are no allegations in the complaint that defendants provided him with false information.  Defendants never represented that plaintiff's deed of trust would be modified.  Plaintiff also does not allege that defendants informed him that he was not in default if he made lowered payments, or that he would not have to pay the difference if he did not qualify for a permanent loan modification.  Like his claim of promissory estoppel, plaintiff's claim of negligent misrepresentation is based in defendants' inaction and the fact that they continued to accept his payments, albeit placing them in an unapplied account, and defendants did not inform plaintiff that they considered the loan to be in default.  As pleaded, defendants' inaction may have lulled plaintiff into believing that he was not in default, but defendants did not provide him with false information, which is a required element of the claim. The Court finds plaintiff has failed to state a claim of negligent misrepresentation because plaintiff

-14-

has not alleged that defendants provided him with false information.  The Court will therefore dismiss Count V.

### V.  Conclusion

To summarize, the Court finds that plaintiff has failed to state a claim under Missouri law for wrongful foreclosure (Count I), to set aside the foreclosure sale (Count II), for promissory estoppel (Count IV), or for negligent misrepresentation (Count V).  Defendants moved to dismiss plaintiff's claim of equitable redemption (Count III), and plaintiff conceded that this claim should be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant CitiMortgage Inc.'s Motion to Dismiss, defendant ABN AMRO Mortgage Group, Inc.'s  Motion to Dismiss, and defendant Federal Home Loan Mortgage Corporation's Motion to Dismiss Count II, III, and IV are **GRANTED.** [Docs. 9, 10 and 28].  Plaintiffs' complaint is **DISMISSED** with prejudice.

An appropriate Order of Dismissal will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  _29th_  day of March, 2013.